UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **STEPHEN SPRINGSTUBBE,** individually and on behalf of all others similarly situated, | Case No. |
| | **CLASS ACTION COMPLAINT** |
| *Plaintiff,* | **DEMAND FOR JURY TRIAL** |
| *v.* | |
| **MAGIC WINDOW COMPANY**, doing business as MAJIC WINDOW COMPANY, a Michigan registered corporation, | |
| *Defendant.* | |

## CLASS ACTION COMPLAINT

Plaintiff Stephen Springstubbe ("Plaintiff Springstubbe" or "Springstubbe") brings this Class Action Complaint and Demand for Jury Trial against Defendant Magic Window Company doing business as Majic Window Company ("Defendant" or "Majic Window") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by making telemarketing calls to consumers without consent including calls to phone numbers that are registered on the National Do Not Call registry ("DNC") and to consumers who have expressly requested that the calls stop. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Springstubbe, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to

1

all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1.    Plaintiff Springstubbe is a resident of Richmond, Michigan.

2.    Defendant Majic Window is a corporation registered in Michigan with its headquarters located in Wixom, Michigan. Defendant Majic Window conducts business throughout this District.

## JURISDICTION AND VENUE

3.    This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4.    This Court has personal jurisdiction over the Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant has its headquarters in this District and the wrongful conduct giving rise to this case was directed from this District. Venue is also proper because Plaintiff resides in this District.

## INTRODUCTION

5.    As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number

of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6.     When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

7.     By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

8.     The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

9.     According to online robocall tracking service "YouMail," 4.3 billion robocalls were placed in September 2023 alone, at a rate of 142.4 million per day. www.robocallindex.com (last visited October 29, 2023).

10.     The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

11.     "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

12.     "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

13.     Defendant Majic Window sells home improvement/replacement products to Michigan consumers including replacement doors, wood/laminate flooring, roofing, carpet, siding, bathtubs, and more.[3]

14.     Defendant Majic Window places solicitation calls to consumers, as per Plaintiff's experience. Oftentimes, these calls are being placed to consumers without consent, including to consumers like the Plaintiff that registered their phone numbers on the DNC.

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.linkedin.com/company/majic-window-co/about/

15.    To make matters worse, Defendant Majic Window lacks a sufficient internal do not call system, causing consumers like the Plaintiff in this case to receive unsolicited telemarketing calls despite having requested that the calls stop.

16.    Many consumers have posted complaints about unsolicited calls they have received from Defendant Majic Window, including complaints from consumers who asked for the calls to stop but who still received additional calls. The following list of complaints were all addressed to Defendant either through Google or through its Better Business Bureau website, including:

**Better Business Bureau Complaints Direct to Defendant Majic Window:**

- "***This company refuses to remove me from their sales call list.*** They frequently harass me with calls. I have asked 3 times now."[4] (emphasis added)

- "Do not use. ***They harass you and call multiple times even after you tell them youre not interested.*** Also dont appreciate being asked if the salesperson can talk to my parents in my own home, as an adult woman. I will never use them for windows or anything."[5] (emphasis added)

- "***I have continuously asked them to take me off of their call list yet I still receive calls.*** If it happens again, I am filing harassment charges."[6] (emphasis added)

**Google.com Reviews Direct to Defendant Majic Window:**

---

[4] https://www.bbb.org/us/mi/wixom/profile/window-installation/majic-window-company-0332-20002178/complaints
[5] https://www.bbb.org/us/mi/wixom/profile/window-installation/majic-window-company-0332-20002178/customer-reviews
[6] *Id.*



**Brandon Hohner**

Local Guide · 46 reviews

⭐☆☆☆☆  4 months ago

Once they get your number/email, the harassing phone calls never end.. Asked MANY times to be put on a do not call list, only to be hung up on, called again...

5 months later, even after this company replied on this review stating they'd remove my contact info, I STILL have people from the company calling AND showing up to my house trying to sell me something. When you've been told to stop repeatedly yet it continues it crosses over into harassment.

👍 3

**Response from the owner** 9 months ago
We apologize for the inconvenience. We will go through our records and remove your contact information.                                                     7



**Scott Labadie**

Local Guide · 38 reviews · 1 photo

⭐☆☆☆☆  3 months ago

**Critical:** Professionalism

You guys will not stop calling me. It's literally 5-6 times a day. I didn't even commit nor sign anything for a quote. Ready to get an attorney involved . Just ridiculous.                                                     8

---

[7] https://www.google.com/search?q=majic+window
[8] *Id.*



**Rania Tootla**
5 reviews

⭐ ☆ ☆ ☆ ☆   8 months ago

A sales representative who looked like a teenage came to my home, kept asking if she could talk to my parents (I am a 27 year old woman), and despite not using their service, they just keep calling and calling even after I have said multiple times I am not interested. I have been blocking every number that calls from them and have expressed my frustration to them but nope, months later still getting their calls. I'd avoid because harassing someone multiple times to get business is a sketchy practice so imagine actually working with such a company.

Update: 3/4/22: just received another call from 'customer retention' which was immediately blocked.

Update: 6/17/22: just received another call. They are relentless and not in a good way. Awful business practices.

Update: 9/2/2022: received yet another call from this company, an individual named 'Nico'. Unless you want to continually be harassed years after this company first meets you, avoid avoid avoid.

Update 9/12/2022: another call! Despite asking to be put on their do not call list. I'm sure I will be updated this yet again.

👍 10                                                                      9

- "***I have asked Majic Windows to take my name/number off of their call list at least 10 times.*** They call every day from a new number. Would never even think of using them on any home project! Very unprofessional."[10] (emphasis added)

- "Do not use this company unless you want to get spam called everyday, deal with people that don't understand basic business communication, and zero customer service skills."[11]

- "Whatever you do, do NOT share your phone number with this company. I had them provide a quote for me over a year ago and they have called almost daily for over a year, ***despite multiple polite requests to remove us from the call list.*** Recently, more than one of their sales reps got combative and disrespectful during the call when I politely asked to be removed from the call list. This company has arguably the

---

[9] *Id.*

[10] *Id.*

[11] *Id.*

worst customer service and salesmanship I've ever experienced and the moment you are in their system, they will NEVER leave you alone. If you choose to use them, or even share your contact information, you do so at your own risk. You have been warned."[12] (emphasis added)

- "I had set up an appointment for an appointment. Had to reschedule. After I rescheduled they called next saying asking to set up appointment. Told them I already had a date. Next day same thing. After doing this a couple times I felt uneasy using a company that kept hounding me after scheduling a date. So the next time they called I said forget it and canceled because they called me 6 times to schedule an appointment I had already scheduled.
  They showed up anyway, I told them not interested. Since then they continue to call. *I have told them I don't want their service and would never use them and they continue to call*... very unprofessional."[13] (emphasis added)

- "*Another unprofessional telemarketing call from the same man who told me he would take me out of their system* . NO MEANS NO! Their telemarketing team is undesirable and arrogant, will bully you until you hang up on them . I will never let anyone from my family or anyone I know personally use this company due to the fact that majic staff is unprofessional and rude everytime they have contacted me"[14] (emphasis added)

- "*Aggressive cold calling after repeated attempts to be removed from call list.* Sales rep refused to listen, refused to allow me to speak to a supervisor. Wasted my time during my work day. This is now the third call I have gotten from this rep. Be careful. Any company that uses these sales tactics clearly does not care about the customer experience. When it is time to replace my windows, this will be the last company I use."[15] (emphasis added)

- "They have called me every day asking if I am interested. I'm not. After the harrassment I've received I won't ever be doing business with them. Horrible sales team.

---

[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*

To those of you saying they never return your calls- they are too busy harrasing those of us who ARE NOT INTERESTED!"[16]

17.     In response to these calls, the Plaintiff brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Classes and costs.

### PLAINTIFF SPRINGSTUBBE'S ALLEGATIONS

18.     Plaintiff Springstubbe registered his cell phone number ending in 8967 on the DNC on January 1, 2010.

19.     Plaintiff Springstubbe uses his cell phone number for personal use only as one would use a residential landline telephone number.

20.     In mid-2021, Plaintiff Springstubbe was doing yard work when a Majic Window employee approached him soliciting different remodeling options including roofing. Plaintiff did require remodeling for the roof of his garage so he agreed to receive a quote and provided his cell phone number to the Majic Window employee.

21.     Over the last 2 years, Plaintiff Springstubbe has received multiple calls from Defendant Majic Window soliciting home improvement/renovation products and services to his cell phone number.

---

[16] *Id.*

22.     Plaintiff Springstubbe has repeatedly told the employees to stop calling using language such as, "Leave me alone!" and "Don't bother calling back!" Plaintiff has also told the employees "Stop calling me!"

23.     Despite his stop requests, Defendant Majic Window continues to place unsolicited calls to Plaintiff's cell phone number.

24.     Whenever Majic Window calls Plaintiff Springstubbe's cell phone number, the calls almost always come from different phone numbers, so Plaintiff cannot block the calls.

25.     Plaintiff Springstubbe received an unsolicited solicitation call from Majic Window to his cell phone on May 31, 2023 at 9:40 AM from 586-284-0474.

26.     When Plaintiff answered the call, an employee answered identifying the company as Majic Window. Plaintiff recognized the voice of the employee, who had called at least 5 times before this specific call. The employee was calling to solicit home improvement/renovation services to Plaintiff. The employee specifically referenced new roofing. Plaintiff told the employee not to call him again and ended the call.

27.     586-284-0474 is not in service when dialed.[17]

28.     Despite this clear stop request, Plaintiff Springstubbe received additional unsolicited calls from Majic Window to his cell phone on:

---

[17] Based on an investigation conducted by Plaintiff's attorneys.

- October 3, 2023 from 248-207-6300 – not answered;

- October 4, 2023 from 248-207-6300 – not answered;

- October 6, 2023 from 248-207-6300 – answered and asked to stop calling;

- October 24, 2023 from 248-207-6300 – answered and asked to stop calling; and

- October 31, 2023 from 248-445-7621 – not answered.

29.     When 248-207-6300 is called, an employee answers identifying the company name Majic Window.[18]

30.     When 248-445-7621 is called, an employee identifies the company name Majic Window.[19]

31.     The unauthorized solicitation telephone calls that Plaintiff received from or on behalf of Defendant Majic Window have harmed Plaintiff Springstubbe in the form of annoyance, nuisance, and invasion of privacy, occupied his phone line, and disturbed the use and enjoyment of his phone.

32.     The unsolicited calls from Defendant Majic Window have caused Plaintiff Springstubbe significant mental distress, as he cannot block the calls

[18] *Id.*
[19] *Id.*

because Defendant almost always calls using a different phone number, and his stop requests have been disregarded.

33.     Seeking redress for these injuries, Plaintiff Springstubbe, on behalf of himself and Classes of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

34.     Plaintiff Springstubbe brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

**Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Majic Window called more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff.

**Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant Majic Window called more than one time on their residential telephone number, (2) within any 12-month period (3) for substantially the same reason Defendant called Plaintiff, (4) including at least once after the person requested that they stop calling.

35.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current

or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Springstubbe anticipates the need to amend the Class definition following appropriate discovery.

36. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable, and Plaintiff is a member of the Classes.

37. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

    (a)    Whether Defendant's conduct violated the TCPA;

    (b)    Whether Defendant placed multiple calls within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call;

(c) whether Defendant engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

(d) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

38. **Adequate Representation**: Plaintiff Springstubbe will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Springstubbe has no interests antagonistic to those of the Classes, and the Defendant has no defenses unique to Plaintiff. Plaintiff Springstubbe and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Springstubbe nor his counsel have any interest adverse to the Classes.

39. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the

Classes as wholes, not on facts or law applicable only to Plaintiff Springstubbe. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

### FIRST CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Springstubbe and the Do Not Call Registry Class)**

40.    Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

41.    The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

42.    Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone

subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

43.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Springstubbe and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

44.     Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Springstubbe and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

45.     As a result of Defendant's conduct as alleged herein, Plaintiff Springstubbe and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

46.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## SECOND CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Springstubbe and the Internal Do Not Call Class)**

47.     Plaintiff repeats and realleges paragraphs 1-39 of this Complaint and incorporates them by reference herein.

48.     Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf

17

the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

49.    Defendant placed calls to Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendant to initiate telemarketing calls.

50.    The TCPA provides that any "person who has received more than one

telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

51.     Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a)  An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing his attorneys as Class Counsel;

b)  An award of money damages and costs;

c)  An order declaring that Defendant's actions, as set out above, violate the TCPA;

d)  An injunction requiring Defendant to cease all unsolicited calling

activity, and to otherwise protect the interests of the Class; and

e)  Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Springstubbe requests a jury trial.

Respectfully Submitted,

**STEPHEN SPRINGSTUBBE**, individually
and on behalf of all others similarly situated,

DATED this 1st day of November, 2023.

By: /s/ *Stefan Coleman*
Stefan Coleman
law@stefancoleman.com
Coleman PLLC
66 West Flagler Street, Suite 900
Miami, FL 33130
Telephone: (877) 333-9427

Avi R. Kaufman
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

George T. Blackmore* (P76942)
Apex Law
32900 Five Mile Road
Livonia, MI 48154
734-888-8399

Fax: 734-418-3686
Email: gblackmore@apexgrouplaw.com

*Attorneys for Plaintiff and the putative
Classes*

*\*Local counsel*